**COMMERCE SAVINGS ASSOCIATION OF BRAZORIA COUNTY, Appellant,**

v.

**GGE MANAGEMENT CO. et al., Appellees.**

**No. 16536.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 13, 1976.

Rehearing Denied July 1, 1976.

**72**

Don Stocking, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, M. K. Woodward, Austin, for appellant.

J. Eugene Clements, Walter T. Weather, Jr., Houston, for appellees Gilbert Gertner and GGE Management Co.; Sewell, Junell & Riggs, Houston, of counsel.

Emory T. Carl, Howard C. Lee, Jr., Houston, for appellee Richard B. Merrill, Jr.; Carl, Lee & Fisher, Houston, of counsel.

Conway F. Jordan, Jr., Gary L. Leech, Houston, Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Dallas, for appellee J. B. Westmoreland.

### ON THIRD MOTIONS FOR REHEARING

EVANS, Justice.

A usury case.

After consideration of all parties' motions for rehearing, we withdraw our earlier opinions and substitute this opinion in lieu thereof.

Gilbert Gertner, individually and as president of GGE Management Company, executed a promissory note to Angleton Savings Association dated April 17, 1970, in the principal amount of $600,000.00. This note provided for interest at the rate of 12% per annum over a 10 year period and recited that the principal amount of the note represented (i) the purchase price of certain real property conveyed by the payee to GGE Management Company, and (ii) funds to be advanced by the payee to the makers from time to time for construction of certain improvements.

The underlying purpose of this loan was to provide financing for certain improved property known as Riverside Terrace Apartments in Houston, Texas, owned by appellee, Richard B. Merrill, Jr. In an effort to resolve financial problems concerning this property, appellee, J. B. Westmoreland, a business associate of Merrill, approached Gertner with a plan to refinance the property and place it in a joint enterprise or partnership composed of Gertner, Westmoreland and Merrill. Angleton Savings Association was contacted on behalf of Westmoreland to work out the terms of the financing arrangement. As the transaction was finally structured Merrill conveyed the property to Angleton Savings Association for the sum of $349,000.00 and Angleton Savings Association in turn conveyed to GGE Management Company for a purchase price of $400,000.00. This resulted in an immediate front-end profit to Angleton Savings Association of $51,000.00. Contemporaneously with these conveyances Gertner and GGE Management Company executed the $600,000.00 promissory note and deed of trust and security agreement covering the property, the personalty thereon and assigning rents accruing from the apartment project.

Also contemporaneously with the execution of the note, Gertner and Angleton Savings Association executed a letter agreement restricting Gertner's personal liability "in case of default or foreclosure" to such loss as might be realized by Angleton Savings Association with respect to stated percentages of the unpaid principal balance at time of foreclosure. Merrill and Westmoreland also executed contemporaneous agreements guaranteeing payment of the corporate debtor's obligation to the association "to the extent of Six Hundred Thousand and No/100 ($600,000.00) Dollars or the remaining balance" due under the note.

On August 25, 1972, Gertner individually and as president of GGE Management Company and Angleton Savings Association executed an instrument entitled "Modification and Extension Agreement" which provided that the principal amount of the $600,000.00 note was reduced from $600,000.00 to $539,-226.28, that the interest rate was reduced from 12% to 8.5%, that the final maturity date was extended from August 17, 1980 to September 17, 1996, and that the monthly installments were reduced from $6,607.00 to $4,475.78.

In December 1973 the name of Angleton Savings Association was changed to Commerce Savings Association of Brazoria County and the association will be hereinafter referred to as "Commerce". On February 22, 1974, Commerce brought this suit on the $600,000.00 note as modified by the August 25, 1972 agreement, seeking recovery against Gertner, GGE Management Company, Westmoreland and Merrill, jointly and severally, for the sum of $528,878.98 with interest thereon from November 17, 1973, and for foreclosure of the liens and security interest. Gertner, GGE Management Company and Westmoreland filed verified answers asserting that the loan transaction was usurious. Merrill's answer asserted that he had been released from liability by reason of Gertner's limitation of liability letter and because the modification and extension agreement had been made without his knowledge or consent. By cross-action Merrill asserted a right of indemnification against Westmoreland.

On August 21, 1974, Gertner and GGE Management Company filed a counterclaim against Commerce Savings Association asserting that the note was usurious on its face because it required Gertner, an individual, to pay interest at the rate of

12% per annum; that the loan transaction was a device or scheme to avoid the effect of the usury law and the $51,000.00 profit realized by Commerce was actually interest; that in further violation of the usury laws, Gertner and GGE Management Company had been compelled to pay a fee of $21,000.00 for brokered certificates of deposit so that they could meet the requirements of Commerce that they place a $600,000.00 compensating balance to its account, and that such fee also constituted interest; that similarly Gertner and GGE Management Company had been compelled to pay a fee of $5,912.50 for brokered certificates of deposit in the amount of $200,000.00 which had been required by Commerce to be placed on deposit at Angleton Bank of Commerce to benefit certain officers and shareholders of Commerce in their efforts to acquire control of Angleton Savings Association. In this pleading Gertner and GGE Management Company sought to recover penalty interest in the total amount of $292,242.06 together with attorney's fees and exemplary damages. In a subsequent counter-claim the penalty interest sought to be recovered was substantially increased and other items of recovery asserted.

The jury found: (1) that the unpaid principal balance of the note was $528,878.98; (2) that Commerce had required a real estate profit to itself of $51,000.00 as a condition to making the loan; (3) that such profit was interest, and (4) that the conveyancing transaction upon which such profit was based was a disguise to evade the usury statute. The jury further found: (5) that Commerce had required the borrowers to place a $600,000.00 compensating balance in its accounts as a condition to making the loan; (6) that such deposit was a benefit to Commerce; and (7) that it was the common expectation of the parties that the borrowers would fulfill the requirement of depositing such compensating balance by purchase of brokered certificates of deposit; and (8) that the borrowers paid the sum of $21,000.00 in order to place the $600,000.00 compensating balance in Commerce's account. The jury found (9) that said sum of $21,000.00 was interest, but (10) failed to find

that the requirement of placing the $600,000.00 in compensating balance was a disguise to evade the usury statute. The jury also found (11) that Commerce had directed the borrowers to place a $200,000.00 compensating balance in accounts at the Angleton Bank of Commerce; (12) that such requirement was a condition to the making of the loan; (13) that said $200,000.00 compensating balance was deposited by the borrowers and (14) that it was the common expectation of the parties that such deposit would be fulfilled by the purchase of brokered certificates of deposit. The jury further found; (15) that the borrowers paid the sum of $5,912.50 to place said $200,000.00 compensating balance; (16) that such sum constituted interest and (17) that the requirement of placing the $200,000.00 compensating balance was a disguise to evade the usury statute and (18) benefited Commerce. The jury further found that Commerce had wilfully converted the cost of placing the $200,000.00 compensating balance in Angleton Bank of Commerce, which cost it ascertained to have a fair market value of $5,912.50, and that Commerce had falsely represented to the borrowers that the requirement of such deposit was "proper and lawful." Based upon the issues of conversion the jury also awarded Gertner and GGE Management Company the sum of $277,713.65 as exemplary damages.

In a subsequent set of issues the jury failed to find that it was the intention of Gertner and GGE Management Company to compromise and release their claims for usury by signing the modification and extension agreement dated August 25, 1972. The jury also found that such agreement was executed without the knowledge and consent of Merrill.

The trial court's judgment denied Commerce Savings Association judicial foreclosure under the deed of trust and security agreements and decreed that Commerce take nothing as to any of the defendants. The trial court found as an affirmative fact and as a matter of law that the contracts sued upon were usurious and that Gertner was a guarantor and not a co-maker of the

note. It awarded Gertner and GGE Management Company penalty interest in the amount of $569,010.26; declared GGE Management Company to be the legal owner of the Riverside Terrace Apartments property and cancelled the deed of trust; awarded GGE Management Company the sum of $71,121.02, being the aggregate amount of the principal payments made on the note in the sum of $71,121.02, and also the sum of $48,238.60, representing the amount on deposit in its savings account at Commerce. It further awarded GGE Management Company the sum of $5,912.50, as actual damages for conversion of the cost of the $200,-000.00 certificates of deposit placed with Angleton Bank of Commerce, but refused to award exemplary damages as found by the jury. It awarded Westmoreland the sum of $45,758.92, representing the amount on deposit in his savings account at Commerce and also awarded other relief between the parties, including attorney's fees. Commerce has brought this appeal.

We first consider the contention of Commerce that the claims of Gertner and GGE Management Company were not timely asserted and that such claims are barred by the statutes of limitation.

Article 5069–1.06(3), Tex.Rev.Civ.Stat. Ann., provides in part:

". . . All such actions brought under this Article shall be brought in any court of this State having jurisdiction thereof within four years from the date when the usurious charge was received or collected . . ."

Commerce did not plead the time provision of this article as an affirmative defense, nor did it plead any of the general statutes of limitation. After it rested it sought to file a trial amendment affirmatively pleading such defenses but the trial court denied leave to file. It is the position of Commerce that Article 5069–1.06(3) creates a condition precedent to the maintenance of an action for usury and that it was incumbent upon Gertner and GGE Management Company to prove compliance with such condition, notwithstanding its failure to affirmatively plead that statute, or the gener-

al statutes of limitation, as a defense. It also contends that the trial court abused its discretion in refusing to grant it leave to file its trial amendment asserting such defense.

We are of the opinion that the original answer of Gertner and GGE Management Company affirmatively raised their claim that the transaction was usurious. Thus it becomes unnecessary for us to consider the other assertions advanced by Commerce. In a separately numbered paragraph of their original answer Gertner and GGE Management Company plead:

## II.

"Defendants plead plaintiff's usury as an affirmative defense and will, upon development of further facts, plead their right to recover forfeiture of all principal balance due plaintiff, return of all payments made of principal and twice the amount of interest charged directly and indirectly by plaintiff and its co-parties and co-conspirators, reasonable attorneys' fees which are set for convenience at the level requested by plaintiff's counsel herein, i. e., $52,887.89, interest on all unlawful payments made by defendants from the date such payments were received by plaintiff, their costs of court, and any other sums to which defendants are entitled."

In their prayer contained in this answer Gertner and GGE Management Company sought judgment "for the affirmative relief briefly described herein which will be more fully described in Plaintiff's counterclaim . . ." This pleading contained Gertner's verification, individually and on behalf of GGE Management Company that the contract sued upon was usurious on its face and upon his personal knowledge.

In the absence of special exceptions this pleading adequately set forth a verified claim for affirmative relief based upon the ground that the loan transaction was usurious. See McDonald, Texas Civil Practice, Vol. 2, Sec. 7.52, pp. 298–299; *Wall v. East Texas Teachers Credit Union*, 526 S.W.2d

148, 151 (Tex.Civ.App.—Texarkana 1975, reversed on other grounds, Tex., 533 S.W.2d 918). The prayer contained in this pleading clearly indicated the pleader's intent to assert usury as a basis for affirmative relief and not merely as a matter of defense. See McDonald, Texas Civil Practice, Vol. 2, Sec. 7.52, p. 300; *Thompson v. Gaither*, 45 S.W.2d 1106 (Tex.Civ.App.—Texarkana 1932, writ ref'd). It did not merely assert an intent on the part of the defendants to file a cross-action or counterclaim at some time in the future, as was the case in *Swaim v. International Harvester Co.*, 505 S.W.2d 634 (Tex.Civ.App.—Ft. Worth 1974, writ ref'd n. r. e.). It set forth a sufficient basis, in the absence of special exceptions, for the court to grant the affirmative relief prayed for under the usury statutes, and in the formal counterclaim later filed, such allegations were merely expanded as to detail and scope. Thus we hold that the claim of Gertner and GGE Management Company for affirmative relief under the usury statutes was timely filed. See *Delley v. Unknown Stockholders of The Brotherly and Sisterly Club of Christ, Inc.*, 509 S.W.2d 709 (Tex.Civ.App.—Tyler, 1974, writ ref'd n. r. e.).

On the merits, we first consider the contention of the borrowers that the loan transaction was usurious on its face in that the note was executed by Gertner in his individual capacity.

It is the lender's position that notwithstanding the fact that the face of the note shows Gertner to be a co-maker, the contemporaneous letter agreement limiting his liability, when considered with the savings clause contained in the deed of trust, restricted Gertner's liability to that of a guarantor, as found by the trial court. The borrowers on the other hand argue that the limitation of liability agreement was contingent upon default and that Gertner, as a co-maker, was required to pay and did pay usurious interest on the note in order to avoid default.

In their motions for rehearing the borrowers contend that under the recent holding of the Texas Supreme Court in *Universal Metals & Machinery, Inc. v. Bohart et ux*, 539 S.W.2d 874 (1976), Gertner should be considered a primary obligor rather than a mere guarantor for the maker. In that case it was held that certain individuals who had unconditionally guaranteed payment of the principal and interest of the corporation's note and had expressly waived "any requirement that the holder exhaust any right or take any action against the maker" became, as recited in the note, primary obligors and thus were entitled to assert usury as a defense.

In the instant case the face of the note does reflect Gertner as a co-maker. However the contemporaneously executed limitation of liability agreement expressly provides that Gertner would be held personally liable on the note "only in case of default or foreclosure for any loss realized" by the lender with respect to the principal balance of the note "at foreclosure." This limitation of liability agreement specifically restricted Gertner's obligation to pay specified percentages of the unpaid *principal* balance insofar as the lender might sustain loss with respect thereto at the time of foreclosure. The limitation of liability agreement was executed contemporaneously with the note and is a part of the same loan transaction. At least as between the initial parties thereto its limiting terms must be given effect. *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761, 763 (Tex. Civ.App.—Austin 1974, writ ref'd n. r. e.); Tex.Bus. & Com.Code Ann. Sec. 3.119; *Dorfman v. Smith*, 517 S.W.2d 562 (Tex.Civ. App.—Houston [1st] 1974, no writ). Since Gertner's liability under the loan transaction was only with respect to the payment of certain amounts of the unpaid principal on the note, the transaction as to him was not usurious. *Crow v. Home Savings Association of Dallas County*, 522 S.W.2d 457 (Tex.1975). Neither do we believe that Merrill and Westmoreland may be deemed primary obligors within the meaning of the Bohart decision.

While their agreement did guarantee payment, as distinguished from collection, the terms of such agreement expressly lim-

ited the extent of their liability to the sum of $600,000.00 or "the remaining balance" due under the note and deed of trust. The agreement guaranteed:

". . . the full and prompt payment to the Association at maturity, and at all times thereafter, and also at the time hereinafter provided, of the indebtedness, liabilities and obligations of said Debtor to the Association to the extent of:

SIX HUNDRED THOUSAND AND NO/100 ($600,000.00) DOLLARS or the remaining balance on one certain note and deed of trust . . ."

The question is whether the agreement constituted a guaranty of payment of interest accruing under the note or whether it guaranteed only the amount of the principal obligation from time to time remaining unpaid. See 38 Am.Jur.2d, Guaranty, § 76, p. 1081; 38 C.J.S. Guaranty § 57, pp. 1212–1213. Where, as here, uncertainty exists as to the meaning of a guaranty contract, its terms should ordinarily be given a construction which is most favorable to the guarantor. The guarantor's obligation should not be extended by implication beyond the written terms of the agreement. *Southwest Savings Association v. Dunagan*, 392 S.W.2d 761, 766–67 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.); *Empire Steel Corp. of Texas v. Omni Steel Corp.*, 378 S.W.2d 905, 911 (Tex.Civ.App.— Ft. Worth 1964, writ ref'd n. r. e.). While the agreement in question guarantees payment of the "indebtedness, liabilities and obligations" of the debtor, it expressly provides that the guarantor's liability shall only be "to the extent of" the original amount of the principal obligation or the "remaining balance" due "at maturity." The guaranty agreement of Merrill and Westmoreland should, in our opinion, be construed as a guarantee of payment of the unpaid principal due on the note at time of maturity. See *F. Vogelsang & Bro. v. G. H. Mensing & Bro.*, 1 White & W.Civ.Cas.Ct. App., § 1165 (1881); *North American Life Ins. Co. v. Remedial Finance Corp.*, 178 Okl. 248, 62 P.2d 491, 493 (1936). Thus, we hold that Merrill and Westmoreland are liable

only for interest on the principal balance remaining unpaid on the note at the legal rate from and after the date of default. Article 5069–1.03, Tex.Rev.Civ.Stat.Ann. The guaranty agreement does provide that Merrill and Westmoreland guarantee payment of attorney's fees incurred in the collection of the debt and we, therefore, hold that their liability extends to the stipulated amount of attorney's fees.

We next consider the contentions of the lender, Commerce, that the $51,000.00 real estate profit was, as a matter of law not interest and that the jury's findings that such profit was interest and that the transaction was a disguise to evade the usury statute are against the great weight and preponderance of the evidence.

Commerce concedes that the loan transaction "as carried out gives the appearance of a $51,000.00 'front end profit.'" However, it argues that such "profit" was paid entirely from the loan proceeds and was to be realized in full only if the loan should be paid in full. It further argues that it acted upon advice of counsel and in good faith in the loan transaction, and that even if the $51,000.00 profit is held to constitute interest, no penalty for usurious interest should be imposed.

It was not contended that the conveyancing scheme was other than for the purpose of effectuating the loan arrangement. The evidence negates any intent on the part of Commerce to purchase and hold the property and, on the contrary, the evidence supports the view that Commerce acted solely as a lender and not as a real estate purchaser. Indeed, Commerce itself carried the $51,000.00 item on its books as an "unearned loan fee." In connection with its deliberation on whether the $51,000.00 profit constituted interest, the jury was instructed that the term "interest" should not include "any time price differential however denominated arising out of a credit sale." The term "time price differential" was defined as the difference in price quoted by a willing seller to a willing buyer for a sale for cash as contrasted to a sale on

credit. No complaint was asserted with respect to the submission of this charge.

 Whether the sum of $51,000.00 transferred to Commerce represented a bona fide real estate "profit" or merely constituted an additional charge for the loan of money was a question for the jury which it determined contrary to the position of Commerce. Neither the form of the transaction nor the fact that the money was paid from loan proceeds precluded a finding that such sum was an additional loan charge exacted by Commerce. *F. B. & D., Inc. v. Nathan Alterman Electric Co.,* 394 S.W.2d 821 (Tex.Civ.App.—San Antonio, 1965, writ ref'd n. r. e.). The jury found that such profit constituted interest and that the transaction was a disguise to evade the usury statute. Upon these findings, which we hold to have support in the evidence and are not against the great weight and preponderance of the evidence, the trial court properly determined the real estate "profit" to be an additional charge for the loan. *Fisher v. Hoover,* 3 Tex.Civ.App. 81, 21 S.W. 930 (1893, no writ); *Burkitt v. McDonald,* 26 Tex.Civ.App. 426, 64 S.W. 694 (1901, no writ); *Woodman v. Bishop,* 203 S.W.2d 977 (Tex.Civ.App.—San Antonio, 1947, no writ. In view of the jury's finding that such profit resulted from a scheme to evade the usury statute it matters not that Commerce may have acted on advice of counsel. *Johns v. Jaeb,* 518 S.W.2d 857 (Tex.Civ.App.—Dallas 1974, no writ).

It is further the argument of Commerce that the restoration of the $51,000.00 charge under the provisions of the modification and extension agreement removed any taint of usury. The testimony of Gertner supports the jury finding that neither he nor GGE Management Company intended by execution of the agreement to compromise and release claims for usury. There was also evidence that supports the jury's findings that the agreement was executed without the knowledge or consent of Merrill. The findings of the jury with respect to the modification and extension agreement are not against the great weight and preponderance of the evidence and the trial court

properly concluded upon such findings that any previously made usurious charges or payments were not purged by execution of this agreement. *Commerce Trust Company v. Ramp,* 135 Tex. 84, 138 S.W.2d 531, 535 (1940).

We next consider the question of whether the brokerage fees which the borrowers were required to pay for the purchase of brokered certificates of deposit constituted additional loan charges.

While the jury found that it was the common expectation of the parties that the requirement of compensating balances would be fulfilled by the purchase of brokered certificates of deposit, the loan documents did not expressly require such deposits, and there is no evidence that Commerce participated in the negotiation of such fees, in the selection of the brokerage agents, or in the handling of such fees with the brokerage agents. The compensating balances were not supplied from the borrowers' own deposits and were obtained through the brokerage of certificates of deposit owned by third parties. The evidence does not indicate that Commerce collected any brokerage fees as a part of the loan transaction, and the negotiation and payment of such fees was handled independently by the borrowers.

 It has been held that a payment of bona fide fees to third parties for service actually rendered to the parties to a loan does not constitute interest, even though paid to the lender's special agent, if the agent has only limited or special authority and the lender does not participate in the funds so paid. *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937). In the case at bar, the fees for the certificates of deposit were paid directly by the borrowers to third party brokers and Commerce never received any part of such fees. The compensating balance deposits created separate and independent debts between the depositors (who were not the borrowers) and the associations in which such deposits were respectively placed. As distinguished from *Terry v. Teachworth,* 431 S.W.2d 918, 924 (Tex. Civ.App.—Houston [14th], 1968, writ ref'd

n. r. e.), and cases cited therein, the brokerage fees for such deposits were not charged or collected by the lender as loan costs. Thus, Article 852a, Sec. 5.07, Tex.Rev.Civ. Stat.Ann., the Texas Savings & Loan Act, which authorizes savings and loan associations to require its borrowers to pay "reasonable expenses" incurred in connection with the "making" of real estate loans, would not appear to be applicable to these charges. Under the circumstances presented by the evidence it was for the jury to determine the bona fides of the requirement by Commerce that such compensating balances be deposited. See *Morris v. Miglicco,* 468 S.W.2d 517 (Tex.Civ.App.— Houston [14th], 1971, writ, ref'd n. r. e.); *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709, 712 (1942).

■ The jury failed to find that the requirement of the $600,000.00 deposit was a subterfuge to evade the usury statute. The cost of such deposit cannot, therefore, be deemed a usurious charge of interest. See *Great Southern Life Ins. Co. v. Williams,* 135 S.W.2d 241 (Tex.Civ.App.— Amarillo, 1939, writ dism'd, judgment correct); *Dewey v. American National Bank,* 382 S.W.2d 524 (Tex.Civ.App.—Amarillo, 1964, writ ref'd n. r. e.); *Greever v. Persky,* supra; *Sapphire Homes, Inc. v. Gilbert,* 426 S.W.2d 278 (Tex.Civ.App.—Dallas, 1968, writ ref'd n. r. e.); *Crow v. Home Savings Association of Dallas County,* 522 S.W.2d 457, 459 (Tex.1975). The jury's separate finding that such cost did constitute interest must be disregarded since, as stated above, it was not a cost charged or collected by Commerce.

■ The jury did find that the requirement of the $200,000.00 compensating balance deposited with Angleton Bank of Commerce constituted a disguise to evade the usury statute, and that such deposit benefited Commerce. It also found that this deposit was actually made and that its cost constituted interest. If the findings of the jury in each of these issues have evidentiary support and are not against the great weight and preponderance of the evidence, the trial court correctly determined the bro-

kerage cost to constitute additional interest. *Mays v. Pierce,* 154 Tex. 487, 281 S.W.2d 79 (1955).

There was some evidence from which the jury could have concluded that the $200,-000.00 deposit was placed with Angleton Bank of Commerce and that the $5,912.50 brokerage fee for such deposit was paid by the borrowers. There was also some testimony that the deposit was of some incidental benefit to Commerce in that it improved the association's good will in the community and its relationship with the bank with which such deposit was made. However, the undisputed evidence reflects that the underlying purpose of the deposit was to satisfy a requirement of Angleton Bank of Commerce that certain individuals who became officers of Commerce, and who were seeking to acquire the controlling stock of Angleton Savings Association, maintain certain levels of account balances with Angleton Bank of Commerce. The testimony clearly established that there were no pending transactions between Commerce and Angleton Bank of Commerce which would have involved the brokered certificates of deposit and there was no evidence that Commerce had participated in or ratified the acts of the "control group" of individuals. There is, therefore, no evidence that the deposit benefited Commerce and the jury's finding to such effect and that the cost thereof constituted interest are without evidentiary support. For the same reason the jury's findings that Commerce wilfully converted the cost of such compensating balance must be disregarded. Since we have held that these findings are not supported by legally sufficient evidence, the trial court erred in concluding that the fees for such brokered certificates of deposit constituted additional loan charges and in assessing such costs as damages for conversion.

■ In view of our holding that the $51,000.00 "profit" constituted an additional loan charge exacted by Commerce, we must determine whether this charge, when added to other items of interest received and collected by Commerce, exceeds the statutory

maximum. Commerce contends that in making this computation the $51,000.00 charge should be apportioned or "spread over" the entire ten year term of the loan. It directs our attention to the "savings clause" in the deed of trust which provides:

"12. INTEREST TO COMPLY WITH THE LAWS OF THE STATE OF TEXAS. In the event any item, items, terms or provisions contained in this are in conflict with the laws of the State of Texas this instrument shall be affected only as to its application to such item, items, terms or provisions, and shall in all other respects remain in full force and effect. It is understood and agreed that in no event and upon no contingency shall the maker or makers of the note secured hereby, or any party liable thereon or therefor, be required to pay interest in excess of the rate allowed by the laws of the State of Texas. The intention of the parties being to conform strictly to the Usury Laws now in force, and any of said contracts for interest shall be held to be subject to reduction to the amount allowed under said Usury Laws as now or hereafter construed by the courts having jurisdiction."

The question of spreading of "front end" loan charges has been a matter of continuing concern and speculation. *Riverdrive Mall, Inc. v. Larwin Mortgage Investors,* 515 S.W.2d 5 (Tex.Civ.App.—San Antonio, 1974, writ ref'd n. r. e.); *Southwestern Investment Co. v. Hockley County Seed and Delinting, Inc.,* 511 S.W.2d 724, 733 [Tex. Civ.App.—Amarillo, writ ref'd n. r. e., per curiam 516 S.W.2d 136 (Tex.1974)]; 12 Houston Law Review 159 (1974); 49 Texas Law Review 419 (1971). In our original opinion we recognized that the concept of "spreading" had, under certain circumstances, been applied by the courts of this State. See *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937); *Imperial Corp. of America v. Frenchman's Creek Corp.,* 453 F.2d 1338 (5th Cir. 1972); *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935 (1935). We held, however, on the rationale of such cases as *Southwestern Investment Co. v. Hockley County Seed and Delinting,*

*Inc.,* supra, and *Terry v. Teachworth,* 431 S.W.2d 918 (Tex.Civ.App.—Houston [14th], 1968, writ ref'd n. r. e.), that spreading was not available to Commerce since the jury had found that the conveyancing transaction was merely a subterfuge to evade the usury statute. We note that the legislature has by amendment to Article 5069–1.07, Tex.Rev.Civ.Stat.Ann., effective September 1, 1975, provided that in determining whether interest rates of real estate loans are usurious, the interest contracted for, charged or received from the borrower shall be spread over the full term of the loan, or if the loan is paid in full prior to the end of the term, the lender may avoid the penalty of usury by crediting or refunding any excess interest so contracted for, charged or received. This statute operates prospectively and does not govern the loan transaction under consideration here.

We have decided, on rehearing, that the savings provision contained in the deed of trust should, under the facts of this case, be applied to the $51,000.00 loan charge. Considering all the loan documents together, and giving effect to the stated purpose of the parties in the savings clause, we believe there is justification for apportioning this charge over the effective period of the loan.

■ We then must determine whether the allocation of this charge results in usurious charge of interest by Commerce in violation of the usury statute. Since the loan was prematurely terminated by the borrowers' default and since the loan documents do not, on their face, evidence a usurious contract it is our opinion that in making this determination, we should consider the loan charges actually charged or received by Commerce during the period of time the loan remained in effect. The loan documents indicate that the loan was initially funded on April 20, 1970, with an advancement to the loan account of the sum of $325,000.00. However, since the sum of $51,000.00 was contemporaneously returned to Commerce at the time the loan was funded, the amount which was actually advanced to the borrowers' account was in the

sum of $274,000.00. See *Nevels v. Harris,* supra; *Adleson v. B. F. Dittmar Co.,* 124 Tex. 564, 80 S.W.2d 939, 940 (1935); 91 C.J.S. Usury § 35, p. 615. The documentary exhibits also indicate that the $51,000.00 charge was "restored" by a credit against principal made on August 31, 1972, pursuant to provisions of the modification and extension agreement. Thus, we believe it appropriate, under the circumstances of this case, to allocate the $51,000.00 loan charge over the period beginning April 20, 1970, and ending August 30, 1972.

Allocating the $51,000.00 loan charge to the interest payments received by Commerce during this period of time and adding thereto the interest payments thereafter received by Commerce to the date of default we determine that the total charges received by Commerce during said period of time were well within the maximum corporate rate permitted by Article 1302, Section 2.09, Tex.Rev.Civ.Stat.Ann. According to our computations based upon the documentary exhibits, the total amount of such charges received by Commerce during such period of time, including the allocated sums attributable to the $51,000.00 charge, was approximately two-thirds of the total amount which Commerce could lawfully have charged had it contracted for interest at the maximum rate permitted by law.

 In making this determination we have been mindful of the contention advanced that Article 1302, Section 2.09, Tex.Rev.Civ.Stat.Ann., requires each month during a given loan period to be considered as a separate and distinct time interval for the purpose of computation and that any monthly payment which exceeds the maximum corporate rate of 1½% per month should be considered usurious. While such a basis for computation may be appropriate in a given case, as, for example, where the lender exacts a specified amount of monthly unearned interest in excess of the maximum monthly rate, we do not believe it can be fairly applied to the circumstances of this transaction. The documentary exhibits reflect that during the period of time in question, payments were made by the borrowers in varying amounts and upon sporadic occasions and it does not appear that the lender required that such payments be made in such manner and amounts. In our opinion, it would be manifestly unfair and beyond the obvious intent of the legislature in the enactment of the usury statute, to impose the severe penalties afforded by Article 5069–1.06, Tex.Rev.Civ.Stat.Ann., solely upon proof that one monthly payment exceeded the statutory limit, where over the effective period of the loan, payments did not, in the aggregate, exceed the amount authorized by law. Such an arbitrary basis of computation would, in our opinion, permit a borrower, unilaterally, to establish a usurious charge, where no such charge had been exacted or required by the lender.

In view of our determination that the total loan charges received by Commerce during the effective period of the loan did not exceed the maximum permitted by statute, and since the loan documents did not, on their face, reflect a usurious contract, the judgment of the trial court will be reversed and rendered insofar as it is based upon a determination that the loan transaction was usurious.

 We next consider the contention of Richard B. Merrill, Jr. that the execution of the modification agreement without his knowledge or consent released his obligations under the guaranty agreement. See *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428 (Tex.1971); *Straus-Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519 (1941). While Commerce does not deny that the terms of the modification agreement materially altered the contractual relationship between the parties, it contends that Merrill and Westmoreland gave advance consent to such alteration under the terms of their guaranty contract. They direct our attention to the provision in the guaranty agreement which provides:

"Authority and consent are hereby expressly given said Association from time to time, and without any notice to the undersigned, to give and make such extensions, renewals, indulgences, settle-

ments and compromises as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty, including the taking or releasing of security and surrendering of documents."

We agree with Commerce that the quoted provisions in the guaranty agreement constituted the guarantors' consent to the execution of the modification agreement. *State Bank of Ft. Worth v. Vickery,* 206 S.W. 841 (Tex.Com.App.1918); *Smallwood v. First National Bank of Bandera,* 300 S.W. 665 (Tex.Civ.App.—San Antonio, 1927, no writ); *Brinker v. First National Bank,* 37 S.W.2d 136 (Tex.Com.App.1931).

The judgment of the trial court is reversed and judgment is here rendered that plaintiff, Commerce Savings Association of Brazoria County, recover of defendant, GGE Management Company, as the principal obligor and against J. B. Westmoreland and Richard B. Merrill, Jr., as guarantors the sum of $528,878.98 representing the unpaid principal balance due under the aforementioned note as of December 29, 1973, and against the said principal obligor, GGE Management Company, for interest accruing on said sum from and after said date at the rate of 10% per annum until paid, and against the said J. B. Westmoreland and Richard B. Merrill, Jr., as guarantors for interest accruing on said sum from and after said date at the legal rate until paid, and for foreclosure of all liens upon property subject to the deed of trust and security agreement securing said indebtedness, including amounts on deposit in savings accounts retained as security therefor and for such other orders, writs and processes as may be necessary and appropriate for the satisfaction of said judgment. Judgment is also rendered in favor of said plaintiff against said defendants for the sum of $52,-878.89 representing the stipulated amount of attorney's fees due with respect to said indebtedness with interest thereon at the legal rate from and after the date of the trial court's judgment until paid. It is further ordered that the said Richard B. Merrill, Jr., and the said J. B. Westmoreland are entitled to their respective subrogation rights under Section 34.04, Tex.Bus. & Com. Code Ann., and the said Richard B. Merrill, Jr., is also entitled to judgment over and against said defendant, J. B. Westmoreland, under his agreement of indemnification for such sums as he, the said Merrill, may be compelled to pay under and by virtue of the aforementioned judgment.

The judgment of the trial court is also reversed and judgment is here rendered in favor of said plaintiff against said defendant, Gilbert Gertner, for the amount of $120,000.00, being the applicable limit of said defendant's liability under the aforementioned limitation of liability agreement, with interest at the legal rate from and after the date of the trial court's judgment until paid, provided however there shall be credited against said award against Gertner any amount in excess of the sum of $408,-878.98 which may be recovered by said plaintiff under its aforementioned judgment against the other defendants as hereinabove provided and as may be properly allocated to the principal balance due on said indebtedness. It is further ordered that the said Gilbert Gertner is entitled to his subrogation rights under Section 34.04, Tex.Bus. & Com.Code Ann.

The trial court's judgment is affirmed insofar as it denies relief by cross-plaintiffs, Gertner and Westmoreland, against Merrill and by Merrill against Gertner. It is also affirmed insofar as it awards Gertner as cross-plaintiff declaratory judgment that Westmoreland is the owner of a 50% interest in the Riverside Terrace Apartments joint venture and is jointly and severally liable for its debts and for 50% contribution toward any liabilities of said joint venture; provided, however, that this judgment shall be without prejudice to further determination and adjustment of the rights of the parties to said venture insofar as consistent with such declaratory decree.

The judgment of the trial court is also affirmed insofar as it determines and decrees upon the parties' stipulation that cross-plaintiff, GGE Management Company, is entitled to credit as costs of court for

its advancement of the expense of demolishing the structures upon the premises at 2222 Cleburne Street, Houston, Harris County, Texas, which according to affidavit filed with this court is in the total sum of $19,000.00, and it is ordered that such sum be taxed as an additional cost of court.

All costs of court, including costs of this appeal, are taxed two-thirds against GGE Management Company, J. B. Westmoreland, and Richard B. Merrill, Jr., and one-third against defendant, Gilbert Gertner.

Except as specifically granted, all motions for rehearing filed herein by any of the parties are denied.