# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00488-CV

### Los Arboles Tulum, L.P. and Greg Schnurr, Appellants

### v.

### Matula Family, L.P., Appellee

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-19-006429, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING**

---

## DISSENTING OPINION

For the following reasons, I respectfully dissent from the Court's opinion and judgment.

**Breach of Guaranty**

As set out in the Court's opinion, Michael Matula, through the Matula Family, L.P. (together "Matula"), agreed to loan Los Arboles Tulum, L.P. ("Los Arboles"), money to use for the development of a residential community in Tulum, Mexico. Greg Schnurr owned Los Arboles, L.P. On October 23, 2012, the parties executed a promissory note and a guaranty as part of the agreement. In the promissory note, Matula agreed to loan $750,000 to Los Arboles, and Los Arboles agreed to repay the loan with interest. The note specified that Schnurr personally secured the agreement through a security interest, and Schnurr signed the note as manager for Los Arboles. The guaranty, located in a separate provision later in the note,

specified that Schnurr "absolutely, irrevocably, and unconditionally guarantee[d] payment of *this note* according to its terms to the same extent as if I were Borrower on *this note*." (Emphases added).

In addition to that document, the parties also executed a security agreement. That agreement specified obligations that Schnurr was required to comply with as a guarantor and specified that the "agreement may be amended only by an instrument in writing signed by Secured Party [Matula] and Guarantor [Schnurr]." Schnurr signed the security agreement as "Guarantor."

On July 10, 2013, an amendment to the promissory note was executed to increase the note's principal amount by $100,000. The amendment specified that all terms and guarantees "of the Original Note will convey to this Amendment." Schnurr signed the amendment as "Manager" of Los Arboles. Nothing in the amendment specified that Schnurr was also signing as a guarantor under the amendment to the note. The terms of the amendment do not refer to Schnurr; instead, they refer to Los Arboles and Matula as borrower and lender, respectively.

After Los Arboles defaulted, Matula filed suit against Los Arboles and Schnurr asserting several claims. Of significance to this appeal, Matula sued Los Arboles for breach of the promissory note and sued Schnurr for breach of the guaranty. Matula later filed a motion for partial summary judgment against Los Arboles and Schnurr on its breach-of-promissory-note and breach-of-guaranty claims. In their response to the motion for summary judgment, Los Arboles and Schnurr asserted that the summary-judgment motion should be denied with respect to the breach of guaranty claim because the amendment to the promissory note materially altered the terms of the agreement between the parties and because Schnurr did not execute an additional guaranty concerning the amendment. Los Arboles and Schnurr attached to their response an

2

affidavit from Schnurr in which he specified that he executed the amendment to the promissory note while "acting as the manager" of Los Arboles. In his affidavit, Schnurr also explained that Matula "served as my attorney and friend," that their attorney-client relationship "never terminated," and that he relied on Matula for "guidance and advice."

The trial court granted the motion for partial summary judgment finding that Los Arboles was liable for breach of the promissory note and that Schnurr was liable for breach of the guaranty. The trial court ordered that Matula "recover a judgment, jointly and severally," from Los Arboles and Schnurr "in the amount of $2,683,235.67, plus pre-judgment interest accruing thereon at the rate of 18% *per annum* from July 9, 2022, until the date of this judgment, plus post-judgment interest on all amounts awarded herein at the rate of 5.5% per *annum* from the date of this judgment until paid in full." Following that ruling, Los Arboles and Schnurr filed three amended answers, asserting, among other things, that the damages awarded by the trial court were improper because the agreement between the parties did not allow for compound interest.

After Matula dismissed all remaining claims, the trial court signed a final judgment awarding Matula the amount set out above and striking any counterclaims or defenses presented after the date of the order granting partial summary judgment. In their motion for new trial, Los Arboles and Schnurr argued that the amount awarded as interest was improperly calculated. After the judgment became final, Los Arboles and Schnurr appealed the trial court's judgment.

In their first issue, Los Arboles and Schnurr assert that summary judgment should not have been granted because there was a fact issue concerning their material-alteration defense. Assuming for the sake of argument that the first issue was preserved for appellate consideration

3

and that this Court is properly addressing that claim, I would conclude that there was a fact issue precluding summary judgment and would reverse the trial court's judgment and remand for further proceedings. "Summary judgment is designed to eliminate unmerited claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on fact issues." *Waddell v. Kaiser Found. Health Plan of Tex.*, 877 S.W.2d 341, 344 (Tex. App.—Dallas 1994, writ denied). "Summary judgment is a harsh remedy," and appellate courts must "strictly construe summary judgment in procedural and substantive matters against the movant." *Tanksley v. CitiCapital Com. Corp.*, 145 S.W.3d 760, 763 (Tex. App.—Dallas 2004, pet. denied). A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that no genuine issue exists regarding any material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Waddell*, 877 S.W.2d at 344. "[I]n deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant" and "must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor." *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467 (Tex. App.—Dallas 2009, pet. denied).

To establish that Matula was not entitled to summary judgment due to a material alteration, Schnurr simply had to show that there were fact issues concerning whether there was "(1) a material alteration of the underlying contract; (2) made without [Schnurr's] consent; (3) which is to his detriment." *See Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 497 (Tex. App.—Tyler 2016, no pet.). I agree with the portion of the Court's opinion concluding that the first and third elements were met. However, I would conclude that there is a fact issue concerning the second element under the circumstances present here.

4

Schnurr specified in his affidavit that he signed the amendment in his capacity as manager for Los Arboles and did not indicate that he was also acting as a guarantor for the amendment. *See Allbritton v. Gillespie, Rozen, Tanner & Watscky, P.C.*, 180 S.W.3d 889, 894 (Tex. App.—Dallas 2005, pet. denied) (noting that affidavit can create fact question). Consistent with that declaration, Schnurr did not sign the amendment as guarantor and instead signed only as manager for Los Arboles. Given that Schnurr signed a personal guaranty and signed the security agreement as a guarantor in October 2012, signing the amendment solely in his managerial capacity nine months later carries significance, *see First Nat'l Bank v. Burge*, 29 S.W.3d 580, 591 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (explaining that Texas law mandates that courts interpreting guaranty do so in manner that results in "an interpretation that favors the surety"), particularly in the summary-judgment context where every inference must be made in favor of the nonmovant, *see McMahon Contracting, L.P.*, 277 S.W.3d at 467. Although the *amendment* specified that the guaranty "will convey" to the amendment, Schnurr did not sign the amendment as a guarantor. *See Burge*, 29 S.W.3d at 591 (explaining that guaranty must not be interpreted in manner that would allow extending guarantor's obligation by implication beyond written terms of agreement).

Furthermore, I see no reason why a fact issue concerning consent cannot exist simply because Schnurr was the owner of Los Arboles and was aware of the amendment. *See Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 554, 555 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("[t]o show that Hall personally guaranteed the performance . . . the agreement must clearly evidence Hall's intent to become personally liable for the obligations" if company defaulted and concluding that signatory was not liable as guarantor because "[t]he signature line and agreement in this case use only entity-specific terms and do not evidence an intent that

5

Hall's signature was made in an individual capacity"); *Wolf v. Little John Corp. of Liberia*, 585 S.W.2d 774, 776 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) ("[I]f the note contains the name of an organization followed by the name of an authorized individual, plus his office, there is a prima facie showing that the individual signed in a representative capacity, and is thus not personally liable on the note."). Additionally, as stated above, the amendment did not refer to Schnurr. *See First ATM, Inc. v. Onedoz, Inc.*, No. 03-08-00286-CV, 2009 WL 349164, at *4 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op.) (holding that use of entity-specific terms in conjunction with lack of first-person statements in agreement evidenced that any assent by company's owner and president through his signature to statement "individual executing the contract is personally liable" was made only in representative capacity).

Although two of our sister courts have held a guarantor personally liable under the terms of an agreement that he later signed in a representative capacity, the circumstances of those cases differ significantly from those present here. First, in *Chambers v. NCNB Texas National Bank*, the appellant signed a promissory note regarding a loan made to his business partnership and also signed "a continuing guaranty agreement the same day." 841 S.W.2d 132, 133 (Tex. App.—Houston [14th Dist.] 1992, no writ). The business was later converted to a corporation, and the note was renewed. *Id.* The appellant signed the renewed note as a corporate officer. *Id.* Our sister court concluded that the appellant was personally liable on the note because the guaranty by its terms applied to the initial loan and "all renewals and extensions thereof" and because the guaranty provided that any change "in the status of the debtor by 'merger, consolidation *or otherwise*' does not alter the appellant's liability." *Id.* at 134. Second, in *84 Lumber Company v. Powers*, the defendant signed a credit application as president, but the application specifically stated that the applicant "unconditionally and irrevocably personally

guarantee[s] this credit account." 393 S.W.3d 299, 302 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Based on the "clear and unambiguous" language of the guaranty, our sister court concluded that the defendant made himself personally liable for the debt of the company. *Id.* at 305.

The language in the guaranty at issue in this case differs from the language of the guaranties in the above cases and does not prevent there from being a fact issue concerning consent; on the contrary, the language of the only guaranty that Schnurr signed specified that he agreed to be personally liable under the terms "of this note," meaning the promissory note that included the guaranty. *See C. & G. Coin Metter Supply Corp. v. First Nat'l Bank in Conroe*, 413 S.W.2d 151, 154 (Tex. App.—Eastland 1967, writ ref'd, n.r.e.) (noting that consent can be given by terms of guaranty); *see also Commerce Savs. Ass'n of Brazoria Cnty. v. GGE Mgmt. Co.*, 539 S.W.2d 71, 78 (Tex. App.—Houston [1st Dist.] 1976) ("Where, as here, uncertainty exists as to the meaning of a guaranty contract, its terms should ordinarily be given a construction which is most favorable to the guarantor."), *judgment modified on other grounds*, 543 S.W.2d 862 (Tex. 1976). Moreover, Matula does not seek through this suit a continuation of Schnurr's previous guarantor responsibilities to a transferee or under a newly renamed or reorganized company; instead, Matula argues that the amendment made Schnurr personally responsible for an additional $100,000. *See Burge*, 29 S.W.3d at 591. Finally, to the extent any portions from the analyses from our sister courts' cases could be read as support for the trial court's summary judgment, they are not binding precedent on this Court. *See HWY 3 MHP, LLC v. Electric Reliability Council of Tex.*, 462 S.W.3d 204, 211 n.4 (Tex. App.—Austin 2015, no pet.).

7

For these reasons, I believe that there is a fact issue regarding the second element of the affirmative defense.

**Interest Calculation**

In their second issue on appeal, Los Arboles and Schnurr contend that the trial court's damages award was erroneous and should be corrected. Matula asserts that Los Arboles and Schnurr did not preserve this issue because they did not make the claim until after the trial court granted summary judgment.

Los Arboles and Schnurr asserted in their response to the motion for summary judgment that Matula provided insufficient evidence of the amount of money allegedly owed. Specifically, they asserted that Matula "provides <u>no evidence at all</u> to support their position" and instead "simply proclaims they have not received payment for the Note," "provides an[] amortized schedule[,] and now demands $2,683,235.67 and claims 18% per annum until paid in full." Additionally, following the partial summary-judgment ruling, Los Arboles and Schnurr filed three amended answers in which they challenged the propriety of the interest calculations. Later, Los Arboles and Schnurr asserted in their motion for new trial that the damage award adopted by the trial court was incorrect because it was based on compound interest rather than simple interest, because it improperly used a 360-day convention, and because it assessed too early the higher, post-maturity interest rate.

A party seeking to challenge a damage award may raise the issue in a motion for new trial. *Pipgras v. Hart*, 832 S.W.2d 360, 367 (Tex. App.—Fort Worth 1992, writ denied). Similarly, a complaint regarding an interest award may "be preserved in the trial court by a motion to amend or to correct the judgment or by a motion for new trial." *Keith v. Keith*,

8

221 S.W.3d 156, 173 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Los Arboles and Schnurr asserted through their amended answers and through their motion for new trial that the calculations were improperly done, and "[a] trial court has the right to modify, correct, or reform a judgment so that it comports with the evidence presented." *Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 47 (Tex. App.—Texarkana 2000, no pet.); *see also City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 162 (Tex. App.—Dallas 2001, pet. denied) (explaining that courts may take judicial notice of certain matters at any time); *Drake v. Holstead*, 757 S.W.2d 909, 911 (Tex. App.—Beaumont 1988, no writ) (stating that "Texas courts take judicial notice of . . . mathematics" and concluding that trial court erred in refusing to take judicial notice of mathematical computation).

Accordingly, I would conclude that Los Arboles and Schnurr preserved their interest claim for appellate consideration and address their second issue. *See McLemore v. Pacific Sw. Bank, FSB*, 872 S.W.2d 286, 290-91 (Tex. App.—Texarkana 1994, writ. dism'd) (concluding that court had discretion to correct "an arithmetical computation" in interest due under note); *see also Miller v. Kendall*, 804 S.W.2d 933, 944 (Tex. App.—Houston [1st Dist.] 1990, no writ) (explaining that motion to amend or to correct judgment or motion for new trial is proper vehicle for preserving error concerning interest in judgment).

For these reasons, I respectfully dissent from the Court's opinion and judgment.

_____

Karin Crump, Justice

Before Justices Kelly, Crump, and Ellis

Filed: August 29, 2025

9