W. D. NEVELS ET AL. V. H. H. HARRIS.

No. 7171.   Decided February 24, 1937.
Rehearing overruled March 24, 1937.
(102 S. W., 2d Series, 1046.)

*Lockhart & Brown,* of Lubbock, and *C. H. Cain,* of Tahoka, for plaintiffs in error.

The contract sued upon which, in return for the advancement of the principal sum of $5,856.00, required the execution of one principal note for $6,400.00, due five years after date, and the execution of five interest notes for the sum of $512.00 each, due one, two, three, four and five years after date respectively, secured by a deed of trust which provided for the immediate maturity of the principal upon default in the payment of any of such interest notes when due, was usurious and in violation of the usury laws of Texas. Adleson v. Dittmar Co., 124 Texas 564, 80 S. W. (2d) 939; Rosetti v. Lozano, 96 Texas 57, 70 S. W. 204; Dodson v. Peck, 75 S. W. (2d) 461.

*Edwin C. Yeiser* and *Coleman Gay,* both of Austin, for defendant in error.

In addition to authorities cited in the opinion cited Temple Trust Co. v. Cooper, 96 S. W. (2d) 408; Walker v. Temple Trust Co., 124 Texas 575, 80 S. W. (2d) 935; Houston & T. C. Ry. Co. v. DeWalt, 96 Texas 121, 70 S. W. 531.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Travis County, Texas, by H. H. Harris against J. H. Newsom and wife, Audrey Newsom, W. B. Slaton, F. E. Redwine, W. D. Nevels, and G. E. Lockhart to recover on a note for $6400.00 executed by the Newsoms as principals and by Slaton, Redwine, and Nevels as sureties. Also, in Harris' petition he seeks foreclosure of a deed of trust lien given by J. H. Newsom and wife to Lockhart as trustee to secure the above note. This deed of trust covers 640 acres of land in Lynn and Dawson Counties, Texas. Lockhart is the trustee named in this deed of trust, and is sued only as such. The case was finally submitted to the court in the district court without the intervention of a jury and judgment rendered awarding Harris a recovery against J. H. Newsom, W. D. Nevels, W. B. Slaton, and F. E. Redwine for the principal, interest, and attorney's fees alleged to be due on the note sued on. Judgment was also rendered for Harris against all the defendants foreclosing the deed of trust lien on the land above mentioned. No personal judgment was rendered against Mrs. Newsom. The judgment contains other matter not necessary to mention here. All the defendants excepted to the above judgment and gave notice of appeal. Slaton, Nevels, and Redwine, however, were the only defendants to perfect such appeal. On final hearing in the Court of Civil Appeals the judgment of the district court was in all things affirmed. 95 S. W. (2d) 1315. Slaton, Nevels, and Redwine, jointly, have prosecuted writ of error to this Court.

We shall not attempt to detail the pleadings. It is enough to say that we will assume that they are sufficient on both sides to raise the questions of law which we shall decide. We will note, however, that the defendants in the district court urged the defense of usury to the note here sued on.

It appears that on November 27, 1926, one Otto Stolley was engaged in business in the city of Austin, Travis County, Texas. Generally speaking, his business was that of a loan broker, and he had followed such vocation in Austin many years prior to such date. On the date just named J. H. Newsom and his wife, Audrey Newsom, applied in writing to Stolley to either loan them $6400.00 for five years at 8 per cent. interest per annum or secure some one else to make such loan. This application stated that the applicants would pay Stolley "for making or securing said loan for us, five per cent on the amount of the same as your fees, two and one-half per cent of the same for your inspector, and one per cent on the amount of the same for attorney's fees," or a total of $544.00. This application of-

fered a section of land in Lynn and Dawson Counties as security for such loan. It appears that this application was mailed to Stolley by G. E. Lockhart from Lubbock, Texas, with a letter signed "Lockhart & Garrard. By G. E. Lockhart." This letter was dated December 23, 1926, and in substance informed Stolley that the above application was enclosed; that the land offered as security was situated about four miles west of O'Donnell; that it was worth $20.00 per acre; that the application was to take up prior liens on the land; that F. E. Redwine, W. B. Slaton, and W. D. Nevels would also sign the note; and that the land and additional personal security would make a first-class loan.

We will not attempt to detail all of the transactions that occurred regarding the above application. It finally culminated in a loan, and, for the purposes of this opinion, we will assume that it culminated in a loan made by Otto Stolley, represented by a note executed by J. H. Newsom and wife, Audrey Newsom, W. B. Slaton, F. E. Redwine, and W. D. Nevels, and a deed of trust executed by J. H. Newsom and wife to G. E. Lockhart as trustee to secure such note.

The note in question is set out in the record. It is dated November 27, 1926; it is for the principal sum of $6400.00; it was due five years after date; it bears ten per cent. interest from maturity; it provides for ten per cent. attorney's fees; it recites that it is secured by deed of trust on 640 acres of land in Lynn and Dawson Counties, Texas; and it, by its terms, is payable "to the order of Otto Stolley." Also attached to said note, as a part thereof, were five interest coupon notes in the principal sum of $512.00 each, representing 8 per cent. interest on the above principal note of $6400.00 for each of the five years it was to run. The deed of trust securing such note is, in the main, the ordinary form of deed of trust wherein the above land was conveyed to G. E. Lockhart as trustee to secure the above note and interest coupons. We, however, deem it necessary to quote the following portions of the deed of trust:

"The words NOTE or NOTES when used in any connection in this deed of trust; unless qualified in such connection by the words, principal or interest coupon; shall be construed to include both principal and interest coupon note or notes.

"That it is hereby agreed that the default in the payment of any of said notes when such note is due shall mature each and all of said notes, not then due, at the option of the holder or holders of any of said notes so as to render all of said notes immediately due and payable, without notice, and render this deed of trust subject to immediate foreclosure.

" * * *

"That the grantors herein bind themselves, their heirs, executors and administrators, and assigns, jointly and severally, to pay all of the taxes assessed against said property herein conveyed each year; and to pay all of the interest on the sum or sums owing the State of Texas, if any, as part purchase price for said property or any part thereof; and the failure to pay all of said taxes for any year and deliver the receipts for the payments to the payee of said notes, or the holder or holders of said notes, on or before the 1st day of February of the following year; or the failure to pay all of said interest to the State of Texas each year on said sum or sums owing it and deliver the receipts for the payments to the payee of said notes or the holder or holders of said notes on or before the 1st day of November on which such interest is due or the failure when requested to make report concerning administrations, marriages, deaths or any other change concerning the title to said property shall mature each and all of said notes, not then due, at the option of the holder or holders of any of said notes, so as to render all of said notes immediately due and payable, without notice, and render this deed of trust subject to immediate foreclosure.

"That in case said notes or any one or more thereof are matured by the exercise of any option herein provided for the unearned interest evidenced by said interest coupon notes shall be cancelled and credited on said interest coupon notes; and said principal and interest coupon notes shall be considered matured for all of the purposes therein and herein mentioned, and shall bear interest from the date of said maturity at the rate of ten per cent per annum.

"That in case the title to the property herein conveyed, or any part thereof fails or is attacked, the grantors herein hereby bind themselves, their heirs, executors, administrators and assigns, jointly and severally, to pay to the holder or holders of said notes such sum or sums of money as may become necessary to perfect as well as defend the title to said property, or any part thereof, including a reasonable attorney's fee and all costs incident thereto to all to be paid at Austin, Travis County, Texas, on demand therefor.

"That the failure to make any payment of taxes for any year on or before the 1st day of February of the following year, or the failure to make any payment of interest required to be made to the State of Texas on or before the 1st day of November on which it is due shall authorize the holder or holders of said notes, or any one thereof without being required to

do so, to make such payment, and each payment shall bear interest at the rate of ten per cent per annum, from the time made until repaid, which as well as said sum or sums, shall be paid on demand to the holder or holders of the notes making the payment or payments, at Austin, Travis County, Texas, who shall be subrogated to the liens securing the payments made by them, and all receipts issued on such payments shall of themselves be prima facie evidence that the amount or amounts covered by them were just and legal demand and liens against said property; and it is further agreed that the election to make any such payment or payments shall not deprive the holder or holders of said notes of the right to mature the same on account of the failure to make such payment or payments. " * * *

"That the intention of the parties being to conform strictly to the Usury Laws now in force, any of said contracts for interest shall be held to be subject to reduction to the amount allowed under said Usury laws as now or hereafter construed by the courts having jurisdiction."

It is conceded that the above principal note, interest coupons or notes, and deed of trust were executed at the same time. It is also conceded that they were executed in conformity with, and for the purpose of carrying out the written application already mentioned, supra. It follows that we must treat the application, principal note, interest notes, and deed of trust as constituting one contract. It is shown that all of the interest coupon notes above mentioned were finally paid. It is further shown that the default maturity clauses in the deed of trust above quoted were never exercised by the holder. Also, it is shown that more than 10 per cent. interest was never actually paid or collected.

As already stated, the defense in this suit is one of usury. We assume that the transaction represented by the application for the loan was fully carried out. In this connection we assume that Stolley himself made the loan; that he took a note for $6400.00 maturing five years after date; that said note had attached thereto five interest coupons for $512.00 each, representing 8 per cent. interest on $6400.00 for each of the five years; and that Stolley charged $320.00 for making said loan, and deducted also $160.00 for his inspector and $64.00 for his attorney.

1  It will be noted that the borrowers, in effect, agreed to pay Stolley's inspector $160.00 and his attorney $64.00. The undisputed record shows that Stolley paid these sums to such

inspector and attorney as agreed to between him and the borrowers. Also, the record sustains the conclusion that each of such parties performed the services contemplated by the original application contract. G. E. Lockhart was the inspector, and he performed the services of inspecting the land and passing on the solvency of the personal sureties who also signed the note. The attorney examined the abstract, drew all the papers pertaining to the loan, and did such other things as were proper under the circumstances. We think that the money which was actually paid to such parties out of the loan should not be considered as interest. In this connection we hold that it is the law of this State that bona fide fees, such as these, paid to the lender's special agents are not to be considered as interest under our usury laws where such agents have only limited or special authority, and the lender does not participate in the funds so paid. Sales v. Mercantile Nat. Bank at Dallas, 89 S. W. (2d) 247; Noel v. Panhandle Building & Loan Assn., 85 S. W. (2d) 773; Hughes v. Security Building & Loan Assn., 62 S. W. (2d) 219.

2 As the result of the above holding, it becomes evident that if this contract is held usurious it must be because of the $320.00 which Stolley did not pay to the Newsoms. As already shown, Stolley took a note for $6400.00, but he did not lend that amount. He, in fact, only loaned $6400.00 less $320.00 or $6080.00. We must therefore treat the last named figure as the real amount of the loan. Adleson v. Dittmar Co., 124 Texas 564; 80 S. W. (2d) 939. Of course we will treat the $320.00 as interest charged on the loan of $6080.00. At 10 per cent., the highest legal rate, the interest on $6080.00 for one year would be $608.00, and 10 per cent. interest for the five-year period the loan was to run would amount to $3040.00. This sum added to the principal actually loaned, $6080.00, would aggregate $9120.00. This last sum is the maximum amount Stolley could have legally charged, and unless the contract calls for the payment of more than that sum it is not usurious. Adleson v. Dittmar Co., supra; Eubanks v. Simpson, (Civ. App., writ refused) 90 S. W. (2d) 291; Galveston & Houston Inv. Co. v. Grymes, 94 Texas 609, 63 S. W. 860, 64 S. W. 778. It is settled by the above authorities that the law limits the amount that may be charged and received for the use and detention of money to not exceeding 10 per cent. per annum on the amount of the contract, and that, "If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 per cent. per annum from the time the borrower had the use of the money until it is repaid it is not usurious." Adleson v. Ditt-

mar Co., supra; Eubanks v. Simpson, supra. If we consider this a contract for five years, we, under the same, would have the sum of $6400.00 bearing 8 per cent. interest per annum, or $512.00 interest for each of the five years; or a total of $2560.00 interest. This total interest sum added to the $6400.00 would produce $8960.00. This would be $160.00 less than could have been legally charged for the sum of $6080.00 actually loaned. It follows that considered as a five-year contract the retention of the $320.00 did not render it usurious.

3 · It is argued, however, that since the note contained provisions which allowed the holder at his option to mature it at the end of each year for nonpayment of interest, taxes, etc., the contract was, and is, usurious under the decision of this Court in Shropshire v. Commerce Farm Credit Co., 120 Texas 400, 30 S. W. (2d) 282, 39 S. W. (2d) 11, 84 A. L. R. 1269. The rule announced by that authority does not apply to this contract, because it, by its express terms, specifically provides, in effect, that if the principal note is matured before its named maturity date all unearned interest notes shall be cancelled.

4 It is also urged that, under the contract, should the principal note for $6400.00 have been matured at the end of one year by the note holder under some of the options contained in the deed of trust, such holder could have collected the sum of $6400.00 plus $512.00 interest. If the contract, fairly construed, leads to such a conclusion it is tainted with usury. We shall now proceed to decide that question.

We have already called attention to the fact that under the express provisions of this contract unearned interest notes must be cancelled in the event the holder exercises his option under its default maturity provisions. We now call particular attention to the further fact that the deed of trust contains the following very cogent provision:

"That the intention of the parties being to conform strictly to the Usury Laws now in force, any of said contracts for interest shall be held to be subject to reduction to the amount allowed under said Usury Laws as now or hereafter construed by the courts having jurisdiction."

· It is the rule that all parts of a contract must be given effect if it is reasonably possible to do so. It is also the rule that men are presumed to have intended to obey the laws unless the contrary appears. In the contract at bar the lender very carefully provided for the cancellation of unearned interest notes should the default maturity provisions of the contract be exercised.

The parties were not even content to rest the matter of usury there. They added the provision last above quoted. If this provision only has effect to cancel unearned interest coupons from the date the default maturity provisions of the contract are exercised by the note holder it is a vain and an idle stipulation, for the reason that that matter had already been carefully guarded by the other provisions of this contract which we have quoted and discussed. If this last provision can be given effect, and, as already said, it must be given some effect if it is reasonably possible to do so, it must be held to operate to deny the note holder the right, in any event, to collect usury. In other words it denies the note holder the right to collect more than the principal debt and 10 per cent. interest per annum from the time the borrower had the use of the money until he should repay it. This is plain because this clause of the contract expressly states that it is the intention of the parties to conform strictly to the usury laws now in force, and that "any of said contracts for interest shall be held to be subject to *reduction* to the amount allowed under said usury laws," etc. (Emphasis ours.) In other words this clause taken as a whole must be held to operate to reduce the interest in the event of maturity of the principal at the end of one year, to an amount that added to the $320.00 would produce not exceeding 10 per cent. interest on the amount loaned. In other words, had the principal been matured at the end of one year by authority of one or more of the default maturity clauses contained in the deed of trust, under the clause under discussion, the note holder would have been obligated, not only to cancel the unearned interest notes, but to reduce his first $512.00 interest note and even the $6400.00 note to an amount that would render the loan free from usury. This is the plain import of the provision last above quoted, for it says "any of said contracts for interest shall be held to be subject to *reduction* to the amount allowed under said Usury Laws as now or hereafter construed by the courts having jurisdiction." (Emphasis ours.)

Of course we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done.

The record shows that at the time Stolley assigned this $6400.00 note here involved to H. H. Harris, he deducted therefrom the sum of $85.32 earned interest from the date the note was executed until the actual transfer; which date of actual

transfer was also the date that Stolley actually loaned the money. A simple calculation will disclose that if this amount be also deducted from the $6400.00 note, and the principles of law we have announced applied, still it will not be usurious.

Finally, we deem it proper to call attention to the fact that the trial court found that Otto Stolley did not make this loan, but simply acted as the agent or broker of the borrowers to procure Harris to make it. The Court of Civil Appeals affirmed the judgment of the trial court on the theory that this record contains facts and circumstances justifying such court's conclusion. We granted this writ because we seriously doubted whether this record contains any facts tending to show that Harris, and not Stolley, originally made this loan. In view of the fact, however, that we have concluded the loan is not usurious, even if made by Stolley, we have pretermitted any discussion of the question as to who made it. In other words, we have decided the case assuming that Stolley made it, but not deciding that question.

The judgments of the Court of Civil Appeals and of the district court are both affirmed.

Opinion delivered February 24, 1937.

Rehearing overruled March 24, 1937.