**Jess RICKMAN, Plaintiff-Appellant,**

v.

**MODERN AMERICAN MORTGAGE CORPORATION, Nancy Skelton and Federal National Mortgage Association, Defendants-Appellees.**

**No. 76–4155.**

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1978.

Rehearing Denied Dec. 15, 1978.

John F. Morehead, Austin, Tex., for plaintiff-appellant.

J. P. Jones, Gregory Huffman, Harry Roberts, Jr., Dallas, Tex., for Modern American Mortg. Corp.

Duncan E. Boeckman, Dallas, Tex., for Federal Nat. Mortg. Ass'n.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

This is a usury case arising under the laws of Texas and arriving at this court by way of diversity jurisdiction. The appeal follows a take nothing judgment entered against plaintiff Rickman on his usury claim and a $8,250 award to defendant Modern American Mortgage Corporation (Modern American) on its counterclaim. Another defendant-appellee is Federal National Mortgage Association (Federal National) which purchased the controverted mortgage from Modern American.

The allegedly usurious loan was made to finance a development scheme launched by Rickman in 1969. Planning to construct a mobile home park in Terrell, Texas, Rickman and an associate contacted Modern American in early 1970 seeking a loan to be insured by the Federal Housing Authority. Rickman obtained an FHA commitment and secured a non-recourse loan from Modern American in the principal amount of $577,000 to be repaid over the course of 40 years. Loan disbursements began in August, 1970 and continued through January, 1972 until at least $478,948.69 was advanced either to Rickman or for his benefit. In February, 1972 Modern American assigned its entire interest in the Deed of Trust and note to Federal National.[1]

Unfortunately, the mobile home project failed. No monthly payments were ever made by Rickman and in February, 1972

---

1. By this agreement, Federal National agreed to purchase a ratable participating share of 95% of each monthly disbursement made by Modern American.

Federal National declared a default and foreclosed. At the foreclosure sale, Federal National purchased the project for roughly $400,000. Subsequently, title was transferred to the FHA in return for a settlement of Federal National's claim for mortgage insurance proceeds. This settlement included the transfer of 20-year FHA debentures and a small amount of cash to Federal National.

Fortunately for Rickman, the financial collapse of his project did not reach his personal finances. He was not personally obligated on the loan he had secured. Nor had he made any payments against the loan. Subsequent to the failure and foreclosure, though, he brought this suit asserting that the loan transaction by Modern American and Federal National was usurious. Allegedly, the agreement exacted various front-end financing charges that were tantamount to interest.[2] The appellant contends that when this "front-end interest" is added to the interest charged on the face of the note, the result is an effective interest rate in excess of the 10% statutory limit. Accordingly, Rickman claims entitlement to the statutory penalty of double the amount of the illegal excess. The district court rejected this claim and we affirm that holding.

■ Preliminarily, the defendants-appellees challenge Rickman's right to the protection of the usury laws urging that he is not an "obligor" within the meaning of the Texas statute. In general, American courts deny protection from usury to persons such as Rickman who neither pay nor are obligated to pay on a usurious loan. 91 C.J.S. Usury § 72a. However, currently, in Texas, the question is not entirely free from doubt.

In 1967, the usury statute was revised and the phrase "person paying the same" was replaced by "obligor." See Note following 15 Vernon's Ann.Civ.Stat. art. 5069–1.06 (1971). While the former language would clearly dispose of the nonpaying Rickman, the broader term "obligor" offers less certainty and has not been construed by a Texas court. There is at least an argument that because his property was subjected to the obligation, the appellant was entitled to protection from usury. *Cf. Ellis v. Security Underground Storage, Inc.*, 329 S.W.2d 313, 315 (Tex.Civ.App.1960). Therefore, although entertaining serious doubts as to Rickman's status as an obligor, we turn to a more clearly settled basis of Texas law to resolve this case.[3]

■ Even if the appellant were an obligor, his claim could not prevail on the merits. We need not dissect the potential liabilities of the two lenders Modern American and Federal National because it is clear that even when combined, their actions do not offend Texas' usury law. The statutory provision governing Rickman's suit is Section 5069–1.06 of the Revised Civil Statutes of Texas which provide:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees  .  .  .

Texas courts have emphasized that this language is disjunctive thereby providing alternative theories of recovery that include the contracting, charging or receipt of usurious interest. *Windhorst v. Adcock Pipe & Supply*, 547 S.W.2d 260 (Tex.1977). In

---

**2.** The appellant claims the following front-end charges constituted interest:

(1) Federal National's Discount  . . . . . . $27,181.41
(2) Federal National's Financing Fee  . . $11,542.00
(3) Purchasing and Marketing Fee  . . . . $ 2,885.00

When these sums are added to the interest eo nomine of $46,865.79, the total amount of alleged interest is $88,474.70.

**3.** The defendants-appellees contend that the FHA, rather than Rickman, is the real "obligor"

in the transaction. Technically, though, the FHA might well be viewed as a "guarantor" of the loan and, as such, would probably be denied the benefit of usury laws. Vernon's Ann. Tex.Stat. art. 1302–2.09 (1971). *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 879 (Tex.1976). Thus, if Rickman is denied the opportunity to bring suit, it is entirely possible that no party would be able to challenge the allegedly usurious practices of Modern American and Federal National.

present case, there is no serious argument that the parties contracted for or charged usurious interest. The district judge properly interred any such contention through a two-step analysis of the loan contract. First, the court subtracted the front-end charges from the stated principal to arrive at the true principal in accordance with settled Texas doctrine. *E. g., Adleson v. B. F. Dittman & Co.*, 124 Tex. 564, 80 S.W.2d 939, 940 (1935). Next, the court juxtaposed this new figure of the true principal against the interest payments required by the contract to compute the true rate of interest. *Imperial Corporation of America v. Frenchman's Creek Corp.*, 453 F.2d 1338 (5th Cir. 1972). In this way, the impact of front-end charges was spread over the entire 40 year life of the agreement yielding a true interest rate of 9.89316%. Accordingly, the court correctly absolved the defendants of usury under the contracting for and charging theories.

While accepting that, by its terms, the contract was not necessarily usurious, the appellant maintains that the exercise of the acceleration clause, and the subsequent settlement with the FHA, enabled the defendant to extract usurious interest through the loan agreement. Thus, the appellant urges that the defendant incurred liability for usury by *receiving* excessive interest. According to this argument, the true principal was roughly $478,000, the total amount actually dispersed to the appellant. By declaring a default and foreclosing, the defendants were allegedly demanding payment for the full amount of stated principal —$577,000. Such an amount, being claimed just 16 months after the execution of the loan transaction, would obviously entail an annual return well in excess of 10% of the

initial outlay. Not only was a usurious sum demanded through the exercise of acceleration, but the appellant argues that an illegal sum was actually received via the FHA settlement. Because this was a settlement in full, it discharged pro tanto the entire indebtedness claimed by Federal National; since the amount of that claimed indebtedness was usurious, the full compensation received for it arguably amounted to the receipt of a usurious sum.

■ Though intriguing, the appellant's argument must fail. Even assuming that full settlement of a claimed debt constitutes receipt of the entire sum claimed for usury purposes, the effect of the savings clause in this contract cannot be overlooked.[4] This clause provides that, irrespective of other contractual terms, the amount of interest owed the lender cannot exceed lawful limits. Thus, when Federal National asserted its claim for the debt by accelerating the loan, this claim was automatically reduced bringing the interest rate to the legal limit of 10%.

> If the (saving clause) can be given effect, and, as already said, it must be given some effect if it is reasonably possible to do so . . . it denies the note-holder the right to collect more than the principal debt and 10 per cent. interest per annum . . .

*Imperial Corp. of America v. Frenchman's Creek Corp., supra, quoting, Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1049–1050 (1937). Therefore, when Federal National pressed its demand for the full amount due under the contract, it claimed an amount automatically constricted within the bounds of law thereby eliminating the

4. The savings clause provides as follows:

In the event any item, items, terms or provisions contained in this instrument are in conflict with the laws of the State of Texas, this instrument shall be affected only as to its application to such item, items, terms or provisions, and shall in all other respects remain in full force and effect. It is understood and agreed that in no event and upon no contingency shall the maker or makers of the note secured hereby, or any party liable thereon or therefor, be required to pay interest in excess of the rate allowed by the laws of the State of Texas. The intention of the parties being to conform strictly to the usury laws as now or hereinafter construed by the Courts having jurisdiction.

We reject the appellant's claim that this language is insufficient. *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1048 (1937).

possibility that illegal interest was claimed.[5] Accordingly, even assuming that the value assigned to the FHA settlement is to be derived from the amount of Federal National's claim against the appellant, both the claim and the settlement were confined within lawful parameters.

Moreover, a similar result obtains when the FHA settlement accorded its actual value rather than attributing to it the value of the claimed indebtedness. The appellant owed principal in at least the amount of $478,948.69. This sum, which was advanced periodically from September, 1970 until January, 1972 permitted a lawful accrual of interest totalling some $175,000[6] by the time of the FHA settlement in September, 1974. Thus, Federal National could receive from the FHA as much as the combination of these sums, some $650,000, without enjoying more than the lawful 10% return on the original outlay. In fact the face value of the debentures was in the amount of $564,150. This was safely under the amount permitted by statute. We therefore conclude that Federal National did not receive usurious interest on the loan, and, as discussed earlier, no excessive interest was contracted for or charged. Accordingly, appellant's claim for usury must fail.

The appellant also challenges the district court award of $8,250 on the counterclaim of Modern American. This sum was recovered after the appellant dishonored a check delivered to Modern American as part of an escrow agreement. In the proceedings below, the appellant failed to raise any defense to the counterclaim. His assertion in this appeal that the escrow agreement was violated comes too late. Fed.Rules Civ.Proc. rule 8(c). *See e. g., Funding Systems Leasing Corporation v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976). The judgment of the lower court is therefore

AFFIRMED.

---

5. Thus, the defendants-appellees may not be said to have "charged" illegal interest. As discussed earlier, by its terms, the contract did not "charge" illegal interest. Moreover, because of the savings clause, the amount charged by the act acceleration was automatically confined within permissible boundaries.

Like the district court, we are assuming only for purposes of argument that the front-end charges constituted interest. Thus, our decision in no way resolves the status of the alleged interest; such a determination presents a question of fact for the district court. *Frenchman's Creek*, 453 F.2d at 1344.

6. All parties agree that at least $478,948.69 was actually disbursed. The following computations are contained in Federal National's brief and are not disputed by the appellant:

|  | Advances | To or For Borrower | Interest at 10% From Date of Advance to February 1, 1972 |
|---|---|---|---|
| 1. | 8/14/70 | $ 69,392.89 | $10,190.30 |
| 2. | 9/25/70 | 19,945.55 | 2,699.48 |
| 3. | 10/ 1/70 | 38,763.20 | 5,182.59 |
| 4. | 11/ 9/70 | 71,467.51 | 8,791.48 |
| 5. | 12/17/70 | 13,732.88 | 1,546.36 |
| 6. | 1/ 8/71 | 21,817.16 | 2,325.17 |
| 7. | 3/ 3/71 | 51,979.87 | 4,770.76 |
| 8. | 3/15/71 | 89,581.53 | 7,927.35 |
| 9. | 4/ 8/71 | 66,788.61 | 5,471.18 |
| 10. | 8/25/71 | | |
| Final | 1/20/72 | 35,479.49 | 116.64 |
| | TOTALS: | $478,948.69 | $49,021.31 |

It is further calculated that from the time of default in February 1972 until the time of the

---

FHA settlement in September 1974 interest accrued at 10% for an additional amount of $126,363.72. Thus, by the time of the FHA settlement, the permissable return was $654,200, some $90,000 less than the amount of the face value of the FHA debentures.