SPANISH VILLAGE, LTD., Appellant,

v.

AMERICAN MORTGAGE COMPANY, Appellee.

No. 1209.

Court of Civil Appeals of Texas, Tyler.

Aug. 9, 1979.

Rehearing Denied Sept. 13, 1979.

Jay M. Goltz, Dallas, for appellant.

Paul E. Stallings, Scott J. Atlas, Vinson & Elkins, Houston, for appellee.

SUMMERS, Chief Justice.

This is a suit seeking to recover statutory penalties and interest paid upon a loan transaction alleged to be usurious. Appellant, Spanish Village, Ltd., a limited partnership, brought suit against appellee, American Mortgage Company, a corporation, alleging that a transaction to provide a mortgage loan, insured pursuant to Section 236 of the National Housing Act, 12 U.S.C. section 1715z–1 (1970), for the construction and permanent financing of an apartment project in Houston, Texas, was usurious. Appellant sought recovery of double the amount of interest charged and received by appellee, plus interest paid and attorney's fees. American Mortgage denied that the loan calls for or that Spanish Village was charged or paid interest at a usurious rate. After a trial by the court without a jury, the trial court entered a take nothing judgment in favor of American Mortgage Company. From this adverse judgment Spanish Village has perfected this appeal.

We affirm.

On July 12, 1973, appellant and American Mortgage executed a mortgage note in the principal amount of $1,651,900.00, with interest at the rate of 7 percent per annum. The note expressly provided that appellant would make monthly interest only payments to American Mortgage commencing August 1, 1973, and continuing through December 1, 1974, and then monthly principal

and interest payments of $10,265.43 beginning on January 1, 1975, with a final installment of the principal balance and accrued interest on December 1, 2014. Appellant used the proceeds of the loan evidenced by the note to finance construction of the apartment project. As security for the note, appellant on the same date executed and delivered to American Mortgage a deed of trust covering the property on which the apartment project was being built.

Previously, American Mortgage had obtained a commitment for insurance advances from the Department of Housing and Urban Development ("HUD") and a Commitment Contract from the Government National Mortgage Association ("GNMA"). Under the Commitment for Insurance, the Federal Housing Commission agreed to insure the note under the provisions of Section 236 of the National Housing Act, supra, and subsidize a portion of appellant's monthly interest payments, provided the note and apartment project met certain requirements and that the FHA received certain fees.

Under the Commitment Contract GNMA gave American Mortgage a two year option to require the Federal National Mortgage Association ("FNMA") to purchase the note pursuant to GNMA Program 17, provided the loan documents and the completed apartment project met certain requirements and provided that FNMA received a 1 percent (each percent a point) commitment fee and a ½ point purchase and marketing fee.

On July 12, 1973, the same date that appellant delivered its note to American Mortgage, the two parties executed three other federally required documents. First, the parties executed a Building Loan Agreement, which expressly provided that appellant would complete construction of a project meeting FHA approval by June 12, 1974, and that American Mortgage would loan appellant $1,651,900.00, with disbursements to be made upon application by appellant as construction progressed in amounts 10 percent less than the ongoing cost of labor, materials and equipment. In this agreement appellant also agreed to pay

certain fees, including the following: (1) the 1½ point ($24,779.00) FNMA/GNMA fee, consisting of a one-point ($16,519.00) commitment fee which was paid by appellant to American Mortgage on June 8, 1973, and from American Mortgage to FNMA on June 11, 1973, to secure the Commitment Contract and a ½ point ($8,260.00, later reduced to $8,038.44) purchasing-marketing fee, which American Mortgage deducted from its last disbursement to appellant on August 29, 1974, and FNMA deducted from its payment to American Mortgage on January 29, 1975; and (2) a 2 point ($33,038.00) initial service charge which was paid to American Mortgage on July 16, 1973, authorized by FHA to cover the cost of closing the transaction. Contemporaneously, appellant agreed to pay American Mortgage an additional financing charge of $16,159.00 contingent on construction costs not exceeding the face amount of the note.

Second, the parties executed an Agreement and Certification, under which appellant agreed to submit to the FHA a cost certification prior to receipt of the final disbursement from American Mortgage.

Third, American Mortgage submitted a Mortgagee's Certificate and copies of all loan documents to the Commissioner. On the certificate American Mortgage certified that each requirement for obtaining insurance on the loan advances had been met and listed all FHA and GNMA required or approved fees and charges collected and collectible from appellant.

After Construction was completed, appellant's cost certification and other FHA required procedures were not completed until August 29, 1974, more than two months after the projected completion date. Upon appellant's request as the project was being built, American Mortgage paid advances of the mortgage loan proceeds to American Title Company which promptly disbursed the funds to appellant in the total amount of $1,608,299.20.

Interest payments by appellant between July 12, 1973, and August 29, 1974, were made in the form of deductions from advances; and between August 29, 1974, and

January 29, 1975, were made in the same manner or by direct payments in amounts stipulated by the parties.

Since construction costs totaled less than the face amount of the note, appellant on August 29, 1974, paid American Mortgage the $16,159.00 contingent financing fee permitted by the Mortgagee's Certificate; and the two parties executed an Allonge and a Modification Agreement on the same date reducing the note principal from $1,651,900.00 to $1,608,300.00, the amount actually advanced, and reducing the monthly principal and interest payments accordingly from $10,265.43 to $9,994.48. Also on August 29, 1974, American Mortgage chose to exercise its option under its Commitment Contract with GNMA to have FNMA purchase the loan. On January 29, 1975, FNMA honored the commitment to purchase the loan and received an assignment from American Mortgage of the note, the mortgage, the Building and Loan Agreement and all other instruments and documents relating to the loan.

A rider to the note contains the following savings clause provision:

"In the event any item, items, terms or provisions contained in this instrument are in conflict with the laws of the State of Texas, this instrument shall be affected only as to its application to such item, items, terms or provisions, and shall in all other respects remain in full force and effect. It is understood and agreed that in no event and upon no contingency shall the maker of this note, or any part [sic] liable thereon or thereafter, be required to pay interest in excess of the rate allowed by the laws of the State of Texas. The intention of the parties being to conform strictly to the Usury Laws now in force, any of said contracts for interest shall be held to be subject to reduction to the amount allowed under said Usury Laws as now or hereafter construed by the courts having jurisdiction."

At the time of trial, the parties made the following stipulations:

1. Between July 12, 1973, and August 29, 1974, inclusive, American Mortgage received interest totaling $73,499.45 consisting of:

(a) Interest paid by appellant either through the title company or directly—$57,047.93; and

(b) Interest paid by FHA—$16,451.52.

2. On January 29, 1975, FNMA paid American Mortgage $1,608,714.39 representing the outstanding principal balance ($1,607,687.27) on the note plus 29 days interest ($9,065.56) minus a ½% FNMA purchase and marketing fee ($8,038.44) as the purchase price for the note.

3. Between August 29, 1974, and January 29, 1975, HUD made additional interest subsidy payments to American Mortgage totaling $30,921.69.

4. Between August 29, 1974, and January 29, 1975, appellant made interest payments on the note totaling $16,395.76.

5. That both the initial service charge of $33,038.00 (which was remitted back to American Mortgage by the title company on July 16, 1973, out of the first disbursement of the loan proceeds) and the contingent financing fee of $16,159.00 (which appellant paid American Mortgage on August 29, 1974) are interest rather than fees for services. American Mortgage made this stipulation without waiving certain defenses.

6. The $8,260.00 FNMA/GNMA fee and the $16,519.00 GNMA commitment fee are not interest.

■ Appellant filed a statement of facts but requested no findings of fact or conclusions of law and none were filed. Under these circumstances, it is the well settled rule that the appellate court is required to affirm the judgment rendered by the trial court if it can be sustained on any reasonable theory supported by the evidence and authorized by law. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex.1962); 4 McDonald, Texas Civil Practice, Section 16.10, p. 30 (1971 rev.).

Article 16, Section 11 of the Texas Constitution, as amended November 8, 1960, au-

thorized the Legislature to "define interest and fix maximum rates of interest." Pursuant thereto, the Legislature defined interest as "the compensation allowed by law for the use or forbearance or detention of money . . . ."[1] and enacted the following relevant statutes, effective October 1, 1967:

"Article 5069–1.04 Limit on rate

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle."

Article 5069–1.06 provides in pertinent part:

"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

Appellant contends that the loan transaction herein is divisible into two separate parts, to-wit: an interim loan covered by the Building Loan Agreement and a permanent loan transaction covered by the GNMA commitment. Based on this premise, appellant predicates this appeal on the following three points of error: (1) that the interim loan transaction was usurious because the Lender both charged and received interest in excess of the lawful rate for the interim loan transaction, and the Borrower is entitled to receive double the amount of interest charged and attorney's fees; (2) the disclaimer of usurious intent contained in the note does not affect this transaction which is usurious by its terms; and (3) appellant is entitled to recover interest paid the Lender in a total amount of $122,696.35

in addition to the statutory penalties for usury.

Appellant asserts that the contract documents evidence two loans: an interim 13½ month loan during the construction period from July 12, 1973, to August 29, 1974, and a 40⅙ year permanent loan from August 29, 1974, until December 1, 2014; that the amount of interest charged and received by American Mortgage from July 12, 1973, to August 29, 1974 is a total of $122,696.35 (which includes the initial service charge of $33,038.00, the additional service charge of $16,159.00 and $73,499.35 as interest eo nomine), all of which appellant contends is attributable to the interim period from July 12, 1973, to August 29, 1974, and is usurious. Appellant, however, concedes in his brief that "if the instant loan was a 41⅙ year loan, this transaction was not usurious."

Appellee American Mortgage responds that the loan documents as a whole reflect the existence of only one 41½ year loan; that the loan was evidenced by a single note, secured by a deed of trust, to build and finance the apartment project; that appellee advanced funds under the loan from July 12, 1973, through August 29, 1974, when appellee exercised its option to sell the loan to FNMA; that when the interest (including the $33,038.00 initial service charge and the $16,159.00 contingent financing fee) is spread over the entire 41½ year term of the loan, much less interest will be paid than the 10 percent permitted by law.

It is the law of this state that the question of usury must be determined by a construction of all the documents constituting the loan transaction, interpreted as a whole and in the light of the attending circumstances. *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1048 (1937); *Dorfman v. Smith*, 517 S.W.2d 562, 566 (Tex.Civ. App.–Houston [1st.Dist.] 1974, no writ); *Greer v. Franklin Life Insurance Co.*, 109 S.W.2d 305, 310 (Tex.Civ.App.–Dallas 1937, writ dism'd by agr.); *Imperial Corporation*

1. Article 5069–1.01(a). This and all other statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

*of America v. Frenchman's Creek Corp.*, 453 F.2d 1338, 1344 (5th Cir. 1972). It is also the rule that all parts of a contract must be given effect if it is possible to do so and that men are presumed to have intended to obey the law unless the contrary appears. *Nevels v. Harris*, supra 129 Tex. 190, 102 S.W.2d at 1049–1050.

In *Walker v. Temple Trust Co.*, 80 S.W.2d 935, 936 (Tex.Com'n App.1935, opinion adopted), it is stated that

" . . . when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law."

■ We have concluded that the contract documents, when construed together, clearly provide for only one 41½ year loan made by American Mortgage Company to appellant to finance the construction of the Spanish Village Apartment project; that this loan was evidenced by a single mortgage note dated July 12, 1973, maturing December 1, 2014, payable to American Mortgage Company or order, in the original principal sum of $1,651,900.00, with interest at seven percent per annum and secured by a single deed of trust. Under the terms of the note, appellant incurred an obligation to make payments first of interest and then of principal and interest for 41½ years. The loan is described in the contract documents as a loan with a maturity date of December 1, 2014. The Allonge and Modification Agreement executed by the parties on August 29, 1974, reduced the note principal and the principal and interest payments to conform with the amount actually advanced by the lender pursuant to the contract documents. This transaction did not create any new loan. Likewise, the transaction whereby American Mortgage on August 29, 1974,

elected to exercise its option to sell the note under the GNMA commitment and the completion of the assignment of the loan to FNMA on January 26, 1975, did not create a new loan; it was nothing but the sale of an existing loan with no change in the borrower's obligations. In short, the whole transaction and the documents involved reflects a single loan maturing on December 1, 2014.

■ We also hold that the total interest provided for by the note should be spread over the entire 41½ year term of the note under the rule of *Nevels v. Harris*, supra, as adopted and applied by the Supreme Court in *Tanner Development Company v. Ferguson*, 561 S.W.2d 777 (Tex.1977), and again recently in *First State Bank of Bedford v. Miller*, 563 S.W.2d 572 (Tex.1978). *Nevels* stands for the proposition that the total interest (contracted for and judicially determined) should be spread over the full stated term of the loan and 129 Tex. 190, 102 S.W.2d at page 1049 laid down the following test, since referred to as the Nevels doctrine, to determine usury:

"If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 per cent. per annum from the time the borrower had the use of the money until it is repaid, it is not usurious."

Under this test, the relevant time is not determined by whether any particular lender parts with the risk of loss before the end of the note period by selling the note to another lender; it depends solely on the period that the borrower contracts to have and does have use of the funds.

There is another equally well established rule in *Nevels* that requires the test for usury to be applied to the net amount of money of which the borrower had use, detention or forbearance. In further clarification of this rule, the court in *Tanner*, 561 S.W.2d at page 787, stated that "in cash loan transactions from which the lender deducts interest, fees, commissions or other front-end charges, the amount of dollars actually received or retained by the borrower is held to be the 'true' principal. In such

cases, the amount of the stated principal is reduced accordingly in testing for usury."

■ In arriving at the "true" principal in the instant case, we must deduct the initial financing fee of $33,038.00 from the stated amount of the note. When this is done, the total principal and interest which appellant could have been lawfully obligated to pay during the 41½ year term of the loan at the maximum legal rate of 10 percent per annum would be $6,563,609.66. On the other hand, the total principal and interest (including finance charges treated as interest and interest of 7 percent per annum stipulated in the note) to be paid by appellant and HUD between July 12, 1973, and December 1, 2014, under the terms of the note will be the sum of $4,958,192.31. Since the total principal and interest of $6,563,609.66 chargeable at the maximum rate of 10 percent per annum exceeds the total principal and interest of $4,958,192.31, including HUD payments contracted for under the terms of the note at the rate of 7 percent per annum, the loan is clearly not usurious. Furthermore, if the contingent financing fee of $16,159.00 paid by appellant on August 29, 1974, is deducted from the stated amount in arriving at the "true principal," the loan still would not be usurious. Appellant's first point of error is accordingly overruled.

■ Under its second point of error, appellant contends that the disclaimer of usurious intent contained in a rider to the note does not affect this transaction which it asserts is usurious by its terms. We disagree. In the first place, the transaction herein is not usurious by its terms. The Supreme Court in *Nevels v. Harris*, supra 129 Tex. 190, 102 S.W.2d at 1050, construed the effect of an identical savings clause in that contract, which also was not usurious by its terms, as follows:

"If this last provision [referring to the savings clause] can be given effect, and, as already said, it must be given some effect if it is reasonably possible to do so, it must be held to operate to deny the noteholder the right, in any event, to collect usury. In other words, it denies

the noteholder the right to collect more than the principal debt and 10 per cent. interest per annum from the time the borrower had the use of the money until he should repay it. This is plain because this clause of the contract expressly states that it is the intention of the parties to conform strictly to the usury laws now in force, and that 'any of said contracts for interest shall be held to be subject to *reduction* to the amount allowed under said usury laws,' etc. (Emphasis ours.) . . . In other words, had the principal been matured at the end of one year by authority of one or more of the default maturity clauses contained in the deed of trust, under the clause under discussion, the noteholder would have been obligated, not only to cancel the unearned interest notes, but to reduce his first $512 interest note and even the $6,400 note to an amount that would render the loan free from usury. This is the plain import of the provision last above quoted . . . ."

The court in *Nevels* then made it clear that such a disclaimer or savings clause cannot be used to remove the taint of usury from a contract usurious by its terms when it followed up and said:

"Of course we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done." (supra at 1050)

In *Imperial Corporation of America v. Frenchman's Creek Corp.*, supra at 1341, relied upon by the court in *Tanner*, the deed of trust contained a similar savings clause. The Fifth Circuit held that the effect of a savings clause is to require "spreading" under the doctrine of the *Nevels* case; it further stated:

"Our conclusion that the loan lasted until the due date of the extension note gives effect to the parties' intention evident in the savings clause when their

agreement is open to more than one interpretation on the question of the date the loan was to terminate." (supra at 1346)

Appellant's second point of error is overruled.

In view of our disposition of the first two points, we do not find it necessary to address appellant's third point of error.

The judgment of the trial court is affirmed.